UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE

      *Plaintiff,*

  -against-

BRETT KIMMEL; and NEW YORK CITY
DEPARTMENT OF EDUCATION,

      *Defendants.*

**COMPLAINT**

    Plaintiff Jane Doe, by and through her attorneys, Emery Celli Brinckerhoff Abady

Ward & Maazel LLP, for her Complaint alleges, upon personal knowledge as to herself and

information and belief as to other matters, as follows:

<strong>PRELIMINARY STATEMENT</strong>

    1.  The Washington Heights Expeditionary Learning School's ("WHEELS")

mission is "to collaborate with families to prepare each pre-K through twelfth-grade student

academically, emotionally, intellectually, and socially to succeed in a post-secondary institution

of their choice and beyond."

    2.  However, WHEELS and the New York City Department of Education

("DOE") staff failed to honor that mission when they allowed Principal Brett Kimmel to sexually

abuse one of their students, Jane Doe, over the course of four years.

    3.  This case involves the grooming and sexual abuse of Jane Doe for the

entire duration of her high school career. During this time, Jane should have been having normal

adolescent experiences with her peers. Principal Kimmel—and the DOE's negligence—robbed

Jane of those experiences and opportunities.

4.     Principal Kimmel, Jane's abuser, first set his sights on Jane during her eighth-grade year when she was a student at the WHEELS middle school. Once Jane arrived at the high school, Principal Kimmel initiated a campaign of sexual grooming in which he messaged Jane dozens of times a day. Beginning in her sophomore year, Principal Kimmel began to sexually abuse Jane nearly every day.

5.     Principal Kimmel used his position as principal of WHEELS to increase his access to Jane in plain view of several DOE faculty and staff members. This included giving Jane permission to enter the school building early, giving her full access to use his office at any time, frequently pulling Jane out of her classes to spend time with him, and frequently traveling to and from school, to conferences, and other school trips with Jane in his car.

6.     Numerous students openly discussed, in front of DOE faculty and staff members, their suspicions that Principal Kimmel was having a sexual relationship with Jane.

7.     Numerous DOE faculty and staff members openly discussed, with one another, Principal Kimmel's sexual relationship with Jane.

8.     On information and belief, no DOE faculty or staff member ever reported Principal Kimmel's abuse despite being legally obligated to do so.

9.     DOE did not adequately train its faculty and staff members on identifying signs of sexual abuse and reporting such abuse, including when the abuser was a high-ranking school administrator or principal.

10.     Because DOE faculty and staff never reported Principal Kimmel's abuse, he continued abusing Jane through her eighteenth birthday.

11.     As a result, Jane suffered substantial physical, psychological, and emotional damages.

12.    Plaintiff now brings this civil suit to recover compensatory, punitive, and emotional distress damages for Defendant Kimmel's intentional acts of sexually abusing Jane over the course of her four years in high school and Defendant DOE's negligence in enabling this sexual abuse to occur and continue.

## THE PARTIES

13.    Plaintiff Jane Doe is a resident of Maryland.

14.    Defendant Brett Kimmel is a resident of Florida.

15.    Defendant New York City Department of Education is a municipal corporation headquartered at 65 Court Street, Brooklyn, New York 11201.

## <u>VENUE AND JURISDICTION</u>

16.    The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Washington D.C. and Defendants are citizens of New York and Florida, and the allegations reflect an amount in controversy greater than $75,000.

17.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the events complained of herein occurred in the district.

## <u>JURY DEMAND</u>

18.    Plaintiff demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

### *Jane Begins Her Educational Journey at WHEELS*

19.    Jane Doe was born and raised in Washington Heights.

20.    Jane first began attending WHEELS in 2008 when she was in sixth grade.

21.    Neither of Jane's parents spoke English, and Jane could not get the educational support she needed from them.

22. Nevertheless, Jane dreamed of academic and professional success.

23. Jane was an academically high achieving student throughout middle school.

24. During the eighth grade, Jane was deciding whether to stay at WHEELS for high school.

25. By that time, Principal Brett Kimmel had already been the principal of WHEELS for several years.

26. Principal Kimmel spent a great deal of time meeting and counseling Jane to persuade her to stay at WHEELS for high school. This occurred in person and through emails from Principal Kimmel's DOE email address.

27. Principal Kimmel promised to personally serve as Jane's mentor. He also promised Jane that he would add advanced placement courses that she wanted to take, if they were not yet part of the WHEELS curriculum, and that he would add any sports that she wished to participate in while in high school.

28. Jane looked up to Principal Kimmel as an adult who could finally provide her with the educational support and attention she needed to succeed.

29. Jane ultimately decided to attend WHEELS for high school, in large part because of Principal Kimmel's personalized attention and the promises he made to her.

***Principal Kimmel Begins to Sexually Groom Jane***

30. During Jane's freshman year at WHEELS, Principal Kimmel's interactions with Jane gradually grew more and more inappropriate.

31.    Principal Kimmel initially presented himself as a mentor and "father figure" to Jane. He began helping Jane apply to summer opportunities and inviting her to conferences out-of-town. He assured her that he would help her obtain a good future.

32.    Principal Kimmel presented himself as a necessary element to Jane's future success.

33.    Jane felt that she could only have access to academic support and opportunities through Principal Kimmel.

34.    Through this process, Principal Kimmel became inappropriately close to Jane.

35.    Principal Kimmel would often text Jane during the school day to come visit him in his office and say hello.

36.    Principal Kimmel confided in Jane about his personal life, including his marital problems.

37.    Principal Kimmel would also ask Jane to send him photos of herself.

38.    Principal Kimmel would also send Jane pictures of himself with his lips puckered.

39.    The first time Jane was alone with Principal Kimmel was when he drove Jane home from a Teach for America conference.

40.    Principal Kimmel asked Jane to sit in the front passenger seat of his car.

41.    Jane felt uncomfortable since another teacher was riding in the car with them and was relegated to the back seat.

42.    Principal Kimmel dropped the teacher off before he took Jane home.

43.     When Principal Kimmel dropped Jane off, he got out of the car and asked Jane for a hug. Expecting the hug to be casual, Jane complied. But Kimmel did not give Jane a casual hug. He pulled Jane's body close to his and gave her a full body hug before they parted ways.

44.     Principal Kimmel frequently emailed Jane from official school email addresses, which contained his official title and school signature, as well as other personal email addresses.

45.     The initial email exchanges were benign, but Principal Kimmel gradually began to send Jane flirtatious emails.

46.     Soon, Principal Kimmel began referring to Jane as his "princess," his "baby" and professing his romantic love for her.

47.     During the ninth grade, Jane and her family moved from Washington Heights to the Bronx. Jane's commute on public transportation became an hour and a half each way.

48.     After learning about her move, Principal Kimmel offered to drive Jane to and from school, despite it being out-of-the way for him.

49.     Jane agreed because it cut down her commute to half an hour each way. Soon, Principal Kimmel was driving Jane to and from school almost every day.

50.     In the morning, Principal Kimmel would pick Jane up near her home.

51.     He then drove Jane to school and parked his car in front of the school.

52.     DOE faculty and staff often saw Jane arrive at school with Principal Kimmel in his car.

53.    Principal Kimmel would enter the school building first with Jane following suit shortly thereafter. Jane would then go directly to Principal Kimmel's office.

54.    Other DOE faculty and staff witnessed Jane entering and remaining in Principal Kimmel's office most mornings before school started and before most other students were permitted in the building.

55.    After school, Jane would enter Principal Kimmel's car directly in front of the school.

56.    A uniformed school resource officer witnessed Jane getting in and out of Principal Kimmel's car on numerous occasions.

***Jane's Sisters Find Out About Principal Kimmel's Grooming and Confront Him***

57.    In June 2012, Jane was visiting her older sister, J.T.

58.    At the time, J.T. was in her early thirties.

59.    During this visit, Jane began casually talking about Principal Kimmel.

60.    J.T. became concerned that Jane's description of her interactions with her principal sounded inappropriate.

61.    Jane forwarded J.T. email exchanges between her and Principal Kimmel.

62.    After seeing the inappropriate emails, J.T. decided to confront Principal Kimmel.

63.    J.T. went to WHEELS with another of Jane's older sisters and met with Principal Kimmel in his office.

64.    J.T. told Principal Kimmel that she had seen the email exchanges between him and Jane and insisted that he stop his inappropriate behavior with Jane.

65.    Principal Kimmel acknowledged the email exchanges and promised Jane's sisters that the relationship would stop.

66.    Jane's sisters believed Principal Kimmel's assurances and thought his inappropriate relationship with Jane ended.

67.    Despite his assurances to Jane's sisters, Principal Kimmel had no intention of stopping, and continued to groom Jane.

68.    Immediately after his meeting with Jane's sisters, Principal Kimmel pulled Jane out of her English class and told her what happened with her sisters. He instructed Jane to regularly delete their messages and emails going forward.

69.    He also told Jane to save his number under a pseudonym on her phone.

***Principal Kimmel First Sexually Abuses Jane on School Property***

70.    In the summer of 2013, after Jane returned home from a summer program in Andover, Massachusetts, Principal Kimmel asked her to come to WHEELS to discuss how the program went.

71.    The school building was open with a skeleton staff because the regular academic school year had not yet started.

72.    When Jane arrived at WHEELS, Principal Kimmel escorted her into his office where he closed the door and drew the blinds.

73.    Principal Kimmel pulled Jane close to him and held her tightly. Jane could feel his aroused penis against her. Kimmel then grabbed Jane's buttocks and kissed her on the lips.

74.    Alarmed, Jane pushed Principal Kimmel away, and he stopped.

***Principal Kimmel Continues Sexually Abusing Jane in His Car During Commutes To and From WHEELS***

75.    During the 2012–2013 school year, when Jane was a sophomore at WHEELS, Principal Kimmel began escalating his sexual conduct towards Jane.

76.    Principal Kimmel asked Jane to download an app called CyberDust. This app allowed Principal Kimmel and Jane to exchange messages that automatically disappeared after a short time.

77.    Principal Kimmel began requesting pictures of Jane via this app. Initially, Principal Kimmel requested pictures of Jane smiling.

78.    Principal Kimmel gradually began asking for more and more sexually explicit photographs. He requested pictures of Jane's underwear and pictures of Jane with her shirt off.

79.    The escalations did not stop there. When driving Jane to and from school, Principal Kimmel began physically touching Jane's intimate body parts and asking her to touch his intimate body parts.

80.    Principal Kimmel bought a new car with tinted windows.

81.    Principal Kimmel started touching Jane's clitoris under her pants and underwear.

82.    Principal Kimmel then started asking Jane to touch his penis under his jeans and underwear. Jane complied.

83.    Jane had never engaged in sexual contact with anyone prior to these experiences.

84.    Principal Kimmel continued to sexually abuse Jane nearly every day throughout her sophomore and junior years during their drives to and from school.

85.    On one occasion, Jane was menstruating and asked Principal Kimmel not to touch her between her legs. Principal Kimmel told Jane he did not care that she was menstruating and promised to only touch her above her vagina.

86.    Not knowing how to respond, Jane acquiesced.

87.    Principal Kimmel proceeded to touch Jane's clitoris.

### Principal Kimmel Continues to Escalate His Abuse of Jane

88.    During the 2014–2015 school year, Principal Kimmel continued to abuse Jane in the same way he had been abusing her for the past two years.

89.    One day, while driving Jane home from school, Principal Kimmel took his penis out of his boxers and pants and asked Jane to perform oral sex on him while he was driving.

90.    Jane refused.

91.    Principal Kimmel then pulled into an empty parking lot and once again asked Jane to perform oral sex on him.

92.    This time, Jane complied.

93.    After a short while, Principal Kimmel started to drive again.

94.    Afraid for her safety, Jane stopped performing oral sex on him.

95.    Principal Kimmel, still driving, asked her to continue.

96.    Jane was still afraid, but she complied.

97.    After a while, Principal Kimmel told her she could stop performing oral sex on him if she wanted to stop.

98.    Immediately, Jane stopped.

99.    Prior to Jane turning eighteen, Principal Kimmel wanted to do something "special" to celebrate Jane's upcoming birthday.

100.    Principal Kimmel rented a van and drove Jane to a secluded area.

101.    Principal Kimmel instructed Jane to take off all her clothes.

102.    Jane complied.

103.    Principal Kimmel then began to perform oral sex on Jane.

104.    Principal Kimmel kept telling Jane how horny he was, how good she tasted, and how he wanted more.

105.    Jane was very uncomfortable and asked Principal Kimmel to stop.

106.    Jane did not know how to express her discomfort to Principal Kimmel.

107.    Principal Kimmel told Jane that he wanted to have intercourse with her.

108.    Jane told Principal Kimmel that she did not want to have intercourse with him and that she wanted to be taken home.

109.    Principal Kimmel stopped and took Jane home.

110.    These incidents of sexual abuse all occurred before Jane turned eighteen.

***Principal Kimmel's Abuse of Jane Was an Open Secret***

111.    For much of the four years that Principal Kimmel groomed and abused Jane, several students at WHEELS knew about their inappropriate relationship.

112.    Many of these students openly talked about Principal Kimmel and Jane having a sexual relationship in front of WHEELS staff and faculty members.

113.    Staff and faculty members heard students discussing Principal Kimmel and Jane's sexual relationship and witnessed first-hand the inappropriately close relationship between them, as discussed above.

114.    DOE did not properly train and/or educate its staff members on how to recognize or report suspected instances of sexual abuse.

115.    DOE did not properly train and/or educate its staff members on how to report suspected instances of sexual abuse when the suspected abuser was a higher up or the principal of a school.

116.    DOE staff who heard about Principal Kimmel's abuse or who witnessed suspicious behavior between Principal Kimmel and Jane did not report the abuse.

117.    Principal Kimmel's prolonged abuse of Jane was a reasonably foreseeable consequence of DOE's negligent supervision of Jane, negligent supervision and retention of Principal Kimmel, and negligent training of its faculty and staff members on identifying and reporting such misconduct.

118.    In the event that DOE received reports of Principal Kimmel's abuse of Jane and/or any other students, DOE failed to take steps to protect Jane from Principal Kimmel's sexual abuse.

119.    DOE faculty and staff knew or should have known that Principal Kimmel was abusing Jane given his open and obvious inappropriate behavior towards Jane.

***Jane Grapples with The Abuse She Suffered***

120.    Over the next six years, Jane began to understand that Principal Kimmel sexually abused her.

121.    Jane realized that Principal Kimmel had used his position to make Jane believe that she could not succeed without him. She had felt completely reliant on him for her academic success and future.

122.    Jane also realized that Principal Kimmel had manipulated her into thinking that their relationship was normal.

123.    As a result of Kimmel's abuse, Jane has had difficulty developing relationships with potential partners.

124.    Additionally, Jane had difficulty being intimate with anyone due to the abuse.

125.    Jane continues to have trust issues and stress dreams because of the abuse.

126.    In 2021, Jane confronted Kimmel about his abuse.

127.    In a message exchange, Principal Kimmel admitted what he had done and referred to his sexual abuse of Jane as his "greatest sin."

128.    After graduating from college, Jane was employed at an all-boys school in Maryland.

129.    After her time there, one of her colleagues was charged with sexually assaulting students at the school.

130.    This colleague had contacted Jane and proclaimed his innocence.

131.    Jane was disgusted by this colleague's attempt to discredit his victims and feign integrity.

132.    Around the same time, Jane began working at a Maryland non-profit.

133.    A former WHEELS teacher, whom Jane knew when she was a student, also worked at the non-profit.

134. This teacher often brought up Principal Kimmel when speaking with Jane.

135. These conversations caused Jane to relive the trauma that Principal Kimmel caused her to endure.

136. After nine months in this position, Jane felt so triggered by her colleague constantly bringing up Brett Kimmel, that she quit her job.

137. These interactions ignited Jane's desire to confront her abuser and seek avenues to justice after suffering in silence for so many years.

138. Jane continues to experience anxiety and depression as a direct result of Principal Kimmel's sexual abuse.

**<u>FIRST CAUSE OF ACTION</u>**
Discrimination on the Basis of Gender in Violation of the New York City Human Rights Law
N.Y.C. Admin. Code § 8-107(4)
(Against All Defendants)

139. Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

140. Defendants are "providers of a public accommodation pursuant to N.Y.C. Admin. Code § 8-102 because they are providers, whether unlicensed or licensed, of goods, services, facilities, accommodations, advantages or privileges of any kind."

141. Defendants know or perceive Plaintiff to identify as female.

142. Defendant Brett Kimmel's sexual abuse of Plaintiff denied Plaintiff of equal advantages and privileges of a public accommodation in violation of § 8-107(4)(a)(1)(a) of the Code and has damaged Plaintiff thereby.

143. Defendant Kimmel was, at all times relevant, an employee of Defendant the New York City Department of Education.

144.    Defendant New York City Department of Education is strictly liable for Defendant Brett Kimmel's discrimination against Plaintiff pursuant to § 8-107(13)(a) of the Code.

145.    As a result of Defendants' discrimination against Plaintiff, Plaintiff constitutes an "aggrieved person" as defined in N.Y.C. Admin. Code § 8-502(a), has been damaged, and is entitled to compensatory damages in an amount to be determined at trial.

146.    Defendant Kimmel's actions in violation of the N.Y.C. Admin. § 8-107(4) were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages pursuant to N.Y.C. Admin. Code §§ 8-502(a).

147.    Plaintiff is also entitled to recover her attorneys' fees and costs pursuant to N.Y.C. Admin. Code § 8-502(g).

148.    Plaintiff has caused to be served a copy of this complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to N.Y.C. Admin. Code § 8-502(c).

149.    This action is timely pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.20 of the New York Penal Law (Sexual misconduct), Article 130.40 (Criminal sexual act in the third degree), Article 130.52 of the New York Penal Law (Forcible touching), and Article 130.55 of the New York Penal Law (Sexual abuse in the third degree), and Plaintiff was less than eighteen years old when such conduct was committed against her.

## SECOND CAUSE OF ACTION
Negligent Supervision of Plaintiff
(Against Defendant New York City Department of Education)

150.    Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

151.    Defendant had a duty of care for the health, safety, and well-being of children in its care.

152.    Because Plaintiff was under Defendant's care, supervision, and control, Defendants had a special relationship with Plaintiff and owed her a duty of adequate supervision.

153.    Defendant had a duty to use the highest degree of care in supervising children, including Plaintiff, under its care.

154.    Defendant breached its duty by its negligent retention and supervision of Principal Brett Kimmel, and its repeated placement of Plaintiff into Principal Kimmel's care.

155.    The sexual abuse Plaintiff suffered was a reasonably foreseeable result of Defendant's breach of its duties.

156.    By failing to protect Plaintiff from abuse, Defendant failed to exercise reasonable care in supervising Plaintiff. Defendant, its officers, agents, servants, and employees were responsible for Plaintiff's injuries as a result of the breach of their duties.

157.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered the damages hereinbefore alleged.

158.    This action is timely pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.20 of the New York Penal Law (Sexual misconduct), Article 130.40 (Criminal sexual

act in the third degree), Article 130.52 of the New York Penal Law (Forcible touching), and

Article 130.55 of the New York Penal Law (Sexual abuse in the third degree), and Plaintiff was

less than eighteen years old when such conduct was committed against her.

### THIRD CAUSE OF ACTION
Negligent Supervision and Retention of Defendant Kimmel
(Against Defendant New York City Department of Education)

159.    Plaintiff realleges as if fully set forth herein the allegations contained in

the preceding paragraphs.

160.    Defendant DOE had notice beginning in 2012, when multiple staff

members witnessed the special attention Principal Kimmel showed Jane, witnessed Defendant

Kimmel calling Jane out of class on many occasions, witnessed Jane getting into Defendant

Kimmel's car in front of the school every day, heard other students openly discuss Defendant

Kimmel's abuse of Jane, that Defendant Kimmel was a danger to Jane.

161.    Defendant DOE thus was aware, or should have been aware, of the danger

Defendant Kimmel posed to Jane.

162.    Yet Defendant DOE repeatedly placed Defendant Kimmel, its employee

and agent, in a position where he could harm Jane or other children despite their knowledge of

his propensity for that harm.

163.    The sexual abuse Plaintiff suffered was a reasonably foreseeable result of

Defendant DOE's breach of its duties.

164.    Defendant DOE is therefore liable for its negligent supervision and

retention of Defendant Kimmel as principal of WHEELS.

165.    As a direct and proximate result of Defendant DOE's negligent supervision and retention of Defendant Kimmel, Plaintiff suffered the damages hereinbefore alleged.

166.    This action is timely pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.20 of the New York Penal Law (Sexual misconduct), Article 130.40 (Criminal sexual act in the third degree), Article 130.52 of the New York Penal Law (Forcible touching), and Article 130.55 of the New York Penal Law (Sexual abuse in the third degree), and Plaintiff was less than eighteen years old when such conduct was committed against her.

### FOURTH CAUSE OF ACTION
Negligent Training
(Against Defendant New York City Department of Education)

167.    Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

168.    Defendant had a duty to use the highest degree of care in supervising children, including Plaintiff, under its care.

169.    Defendant was aware that DOE staff members had previously sexually abused students under the care of Defendant.

170.    Despite having this knowledge, Defendant failed to properly train and/or educate its staff members on how to avoid putting students into situations which could lead to them being sexually abused.

171.    Defendant failed to properly train and/or educate its staff members on how to recognize signs of sexual abuse.

172.    Defendant failed to properly train and/or educate its staff members on how to report instances of suspected sexual abuse.

173.    Because Defendant did not properly train and/or educate on these topics, no DOE staff member reported Defendant Kimmel's inappropriate conduct towards Plaintiff, and Defendant Kimmel's sexual abuse was allowed to continue for years.

174.    The sexual abuse Plaintiff suffered was a reasonably foreseeable result of Defendant's breach of its duties.

175.    Defendant is therefore liable for its negligent training of its staff members.

176.    As a direct and proximate result of Defendant's negligent training, Plaintiff suffered the damages hereinbefore alleged.

177.    This action is timely pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.20 of the New York Penal Law (Sexual misconduct), Article 130.40 (Criminal sexual act in the third degree), Article 130.52 of the New York Penal Law (Forcible touching), and Article 130.55 of the New York Penal Law (Sexual abuse in the third degree), and Plaintiff was less than eighteen years old when such conduct was committed against her.

### FIFTH CAUSE OF ACTION
Crime of Violence Motivated by Gender
New York City Victims of Gender-Motivated Violence Protection Act
N.Y.C. Admin. Code §§ 10-1102 et seq.
(Against Defendant Kimmel)

178.    Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

179.    Defendant's acts described above violate the Victims of Gender-Motivated

Violence Protection Act, New York City Administrative Code § 10-1104.

180.    By sexually assaulting Plaintiff, Defendant has engaged in crimes of violence as defined in the New York City Administrative Code § 10-1103.

181.    Sexually assaulting Plaintiff without consent constitutes violations of N.Y. Penal Law §§ 130.20, 130.40, 130.52, and 130.55.

182.    Defendant's crimes of violence—sexually assaulting Plaintiff—were motivated at least in part by Plaintiff's gender.

183.    As a result of Defendant's crimes of violence motivated by gender against Plaintiff, Plaintiff has been damaged and is entitled to compensatory damages in an amount to be determined at trial.

184.    Defendant's actions in violation of the New York City Victims of Gender-Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

185.    Plaintiff is also entitled to recover her attorneys' fees and costs pursuant to New York City Administrative Code § 10-1104(c).

186.    This action is timely pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.20 of the New York Penal Law (Sexual misconduct), Article 130.40 (Criminal sexual act in the third degree), Article 130.52 of the New York Penal Law (Forcible touching), and Article 130.55 of the New York Penal Law (Sexual abuse in the third degree), and Plaintiff was less than eighteen years old when such conduct was committed against her.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendant as follows:

      a.  compensatory damages in an amount to be determined at trial;

      b.  punitive damages in an amount to be determined at trial;

      c.  reasonable attorneys' fees, costs and disbursements; and

      d.  such other and further relief as this Court deems just and equitable.

Dated: New York, New York
       April 26, 2024

By: _____
      EMERY CELLI BRINCKERHOFF
      ABADY WARD & MAAZEL LLP
      Julia P. Kuan
      Sydney Zazzaro
      600 Fifth Avenue, 10th Floor
      New York, New York 10020
      (212) 763-5000

      *Attorneys for Plaintiff*