UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :
JANE DOE,                                                           :
                                                                    :
                                    Plaintiff,                      :
                                                                    :                24-CV-3201 (JMF)
                    -v-                                             :
                                                                    :                OPINION AND ORDER
BRETT KIMMEL et al.,                                                :
                                                                    :
                                    Defendants.                     :
                                                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Jane Doe, proceeding pseudonymously, brings this lawsuit against the New

York City Department of Education (the "NYCDOE") and Brett Kimmel.  Doe alleges that, from

2011 through 2015, when she was a high school student at the Washington Heights

Expeditionary Learning School ("WHEELS"), Kimmel, the school principal, sexually abused her

almost daily.  In particular, Doe brings a claim against the NYCDOE under the Equal Protection

Clause of the Fourteenth Amendment and claims against both Defendants under New York law.

*See* ECF No. 37 ("Compl.").  Kimmel has filed an answer.  *See* ECF No. 38.  But NYCDOE now

moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Doe's

claims against the NYCDOE as untimely.  For the reasons that follow, the NYCDOE's motion is

GRANTED in part and DENIED in part.  Specifically, the Court grants the motion as to Doe's

state-law claims but denies the motion as to her federal claim.

## BACKGROUND

        The following facts, taken from the Amended Complaint, are assumed to be true for

purposes of this motion.  *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

Doe began attending WHEELS in 2008, when she was in the sixth grade. *See* Compl. ¶ 24. During the eighth grade, when Doe was deciding whether to stay at WHEELS for high school, Kimmel, then the principal, personally entreated Doe to remain at the school, promising to mentor her and to add advanced placement courses and sports of interest to her if they were not already available at the school. *Id.* ¶¶ 28-31. Largely because of her conversations with Kimmel, Doe decided to attend high school at WHEELS. *Id.* ¶ 33.

After Doe began ninth grade at WHEELS in 2012, Kimmel positioned himself as her mentor, helping her with summer opportunities and inviting her to out-of-town conferences. *Id.* ¶ 35. At the same time, Kimmel also began behaving inappropriately towards her, confiding in her about his personal life and marital problems, asking her to send him photographs of herself, and sending her flirtatious emails and photographs of himself. *Id.* ¶¶ 34, 40-42, 49. When Doe's family moved further away from the school, Kimmel offered to drive her to and from school almost every day; Doe accepted the offer. *Id.* ¶¶ 51-53.

In the summer of 2013, Kimmel began sexually abusing Doe at the school and during their drives to and from the school. *Id.* ¶¶ 75-78, 84-89. He also started asking Doe to send him sexually explicit photographs of herself. *Id.* ¶ 83. The physical abuse began when Doe was alone in Kimmel's office one day; he kissed her on the lips, grabbed her buttocks and held her close enough to press his erect penis against her. *Id.* ¶¶ 77-78. The abuse continued during their drives to and from school, during which Kimmel would touch Doe's intimate parts under her clothing and ask her to touch his intimate parts under his clothing. *Id.* ¶¶ 86-87. Over the next two years — Doe's sophomore and junior years — Kimmel abused Doe nearly every day during their drives to and from school. *Id.* ¶ 89. During Doe's senior year, the abuse escalated even further, with Kimmel inducing Doe to engage in oral sex multiple times. *Id.* ¶¶ 93-115.

After Doe left WHEELS, it took years for her to realize that Kimmel had sexually abused her. *Id.* ¶ 132.  On April 26, 2024, she filed this lawsuit, initially bringing claims against the NYCDOE and Kimmel under only New York State law.  *See* ECF No. 1.  On October 16, 2024, Doe filed the operative Amended Complaint, which added her federal claim against the NYCDOE.  Specifically, the Amended Complaint alleges that the NYCDOE violated Doe's right to equal protection "by permitting and tolerating a widespread and persistent policy, custom, or practice of deliberate indifference to sex-based discrimination that subjected Plaintiff to sexual harassment and abuse and deprived her of equal access to educational opportunities based on her sex."  Compl. ¶ 170.  It further alleges that the claim "is timely because Plaintiff did not know about DOE's unconstitutional practices that constituted an unwritten policy of deliberate indifference to her rights . . . until after February 26, 2024, when she learned from a former WHEELS teacher that she and her colleagues did not receive adequate training, if any, on identifying and reporting suspected sexual harassment and abuse of students by DOE staff, particularly when the abuser is a high level administrator or principal."  *Id.* ¶ 173.

## LEGAL STANDARDS

The NYCDOE moves to dismiss pursuant to Rule 12(b)(6).[1]  In evaluating a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018).  A court will not dismiss any claims unless the plaintiff has failed to plead

---

[1]    Although the NYCDOE moves pursuant to Rule 12(b)(6), it erroneously refers to its motion as one for "judgment on the pleadings."  ECF No. 39-1 ("NYCDOE Mem."), at 1.  In any event, the relevant legal standards for a Rule 12(b)(6) motion and a motion for judgment on the pleadings, which is brought after an answer has been filed and pursuant to Rule 12(c), are the same for present purposes.  *See, e.g.*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Significantly, however, "the lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). Thus, it is well established that a pre-answer motion to dismiss on timeliness grounds "may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) (emphasis added) (internal quotation marks omitted); *see also Staehr*, 547 F.3d at 425 ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

## DISCUSSION

In light of the foregoing legal standards, NYCDOE's argument for dismissal of Doe's federal claim can be swiftly rejected. As the NYCDOE concedes, *see* ECF No. 44 ("Defs.' Reply"), at 2, a claim brought pursuant to 42 U.S.C. § 1983 against a municipality (or, as here, municipal agency), such as Doe's, "does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipal] 'policy or custom,'" *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, the claim accrues when the plaintiff "knows or has reason to know" that her injury resulted from a municipal policy or custom. *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir. 1987); *see, e.g., Flores v.*

*Nieva*, No. 14-CV-7960 (KPF), 2017 WL 899942, at *6-7 (S.D.N.Y. Mar. 6, 2017).  Applying

that rule here, the Court cannot say that it is "clear on the face of the complaint" that the three-

year statute of limitations applicable to Doe's federal claim "has run."  *Mosdos Chofetz Chaim*,

14 F. Supp. 3d at 209.  Indeed, as noted above, Doe explicitly alleges in the Amended Complaint

that she "did not know about DOE's unconstitutional practices that constituted an unwritten

policy of deliberate indifference to her rights . . . until after February 26, 2024," Compl. ¶ 173,

only months before Doe filed her federal claim.

In arguing otherwise, the NYCDOE points to the fact that the Amended Complaint

references a 2016 report by the New York Attorney General and a 2019 report by the New York

City Comptroller regarding underreporting of harassment and discrimination by schools in New

York City.  *See* Defs.' Reply 3-4 (citing Compl. ¶¶ 162-64).  A factfinder could perhaps rely on

these reports (not to mention other evidence that may emerge during discovery) to conclude that

Doe knew or had reason to know that her injury resulted from a municipal policy or custom long

before February 2024, but the allegations in the Amended Complaint, without more, are not

enough to make that fact-based determination at this stage of the litigation.  *See, e.g.*, *BPP*

*Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 603 Fed. App'x 57, 59 (2d Cir. 2015)

(summary order) (reversing as "premature" a district court's dismissal on timeliness grounds

where the issue turned on when the plaintiff knew or reasonably should have known that the

defendant caused its injury (internal quotation marks omitted)).  Accordingly, the NYCDOE's

motion to dismiss Doe's federal claim must be and is DENIED.

By contrast, Doe's state-law claims against the NYCDOE — for negligence and for

discrimination in violation of the New York City Human Rights Law ("NYCHRL"), *see*

Complaint ¶¶ 174-212 — are indeed time barred.  As the NYCDOE explains, and Doe does not

dispute, the initial deadlines to file those claims were October 2016 (for the negligence claims), *see* NYCDOE Mem. 7, and July 2018 (for the NYCHRL claim), *see id.* at 16.  In 2019, however, New York enacted the Child Victims Act ("CVA"), *see Caldwell v. City of New York,* No. 21-CV-6560 (LTS), 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021), two provisions of which are relevant here.  The first, codified as N.Y. C.P.L.R. § 214-g, is a revival provision, which states, in relevant part, that

> every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense . . . committed against a child less than eighteen years of age . . . which is barred as of the effective date of this section because the applicable period of limitation has expired . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

The Court assumes without deciding that Doe's state-law claims were revived by this provision.[2]  But the deadline for Doe to file these claims (which was extended due to the COVID-19 pandemic) was March 30, 2022, *see* NYCDOE Mem. 8, and Doe did not file this lawsuit until 2024.  Accordingly, she plainly cannot avail herself of the CVA's revival provision.

Notably, Doe does not argue otherwise.  Instead, she relies exclusively on a different provision of the CVA, codified as N.Y. C.P.L.R. § 208(b), which states, in relevant part, that an action based on "conduct which would constitute a sexual offense . . . committed against [a] person who was less than eighteen years of age . . . may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, on or before the plaintiff . . . reaches the age of fifty-five years."  Doe concedes that her

---

[2]    The NYCDOE wisely concedes that Doe's negligence claims were indeed revived by Section 214-g, *see* NYCDOE Mem. 8, but notes that "neither the Second Circuit nor the New York Court of Appeals has yet held whether the CVA revives NYCHRL claims," *id.* at 16.  The Court need not and does not reach that question here.

state-law claims were time barred when the CVA was enacted but contends that Section 208(b) applies retroactively and, thus, her claims should be deemed timely as they were filed well before her fifty-fifth birthday. *See* ECF No. 42 ("Pl.'s Opp'n"), at 9-13. By contrast, the NYCDOE argues that Section 208(b) applies only prospectively — that is, to claims that were not time barred as of the effective date of the CVA — and, thus, has no purchase here. The Court agrees with the NYCDOE and therefore concludes that Doe's state-law claims are barred.

For starters, every federal court that has addressed the issue has concluded that Section 208(b) applies only prospectively and, thus, does not revive claims that were time barred before the CVA's effective date. *See Friedman v. Bartell*, No. 22-CV-7630 (PMH), 2024 WL 1076736, at *4-5 (S.D.N.Y. Mar. 12, 2024); *Jones v. N.Y.P.D.*, No. 23-CV-9515 (LTS), 2024 WL 325361, at *1 n.2 (S.D.N.Y. Jan. 29, 2024); *Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160, 164 n.2 (E.D.N.Y. 2023); *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 19-CV-707 (WMS), 2022 WL 2124608, at *3, *5-6 (W.D.N.Y. June 13, 2022). New York courts do not appear to have confronted the issue directly, but at least one decision by the Appellate Division indicates that they would almost certainly reach the same conclusion. *See DiSalvo v. Wayland-Cohocton Cent. Sch. Dist.*, 193 N.Y.S.3d 786, 789 (N.Y. App. Div. 2023). The question in *DiSalvo* was different than that presented here — namely, whether Section 208(b) barred a claim revived by Section 214-g where the plaintiff had already turned fifty-five. In holding that it did not, however, the court addressed the interplay between the two sections as follows:

> [T]he structure of the CVA suggests that the two provisions at issue here were
> intended to solve two different problems and were not intended to overlap with
> one another. The CVA "was intended *primarily to revive* civil claims by persons
> subjected to [child] sexual abuse . . . but whose claims have become time-barred,
> *and also* to provide a more generous toll for such claims *in the future*. The first of
> these goals was achieved by CPLR 214-g, and the second by amendments to
> CPLR 208." In other words, the CVA amended CPLR 208 (b) to *prospectively*
> and permanently allow all victims of child sexual abuse to pursue those claims

until age 55, whereas CPLR 214-g was enacted to provide temporary
*retrospective* relief for all claims — regardless of age — for a limited and discrete
period of time.

*DiSalvo*, 193 N.Y.S.3d at 789 (quoting Vincent C. Alexander, Practice Commentaries,

McKinney's Cons. Laws of NY, CPLR 214-g) (internal citations omitted); *accord LG 67 Doe v.*

*Resurrection Lutheran Church*, 164 N.Y.S.3d 803, 805 (N.Y. Sup. Ct. 2022).  *DiSalvo* is

persuasive evidence of how New York courts would answer this question, and there is no reason

to believe that the New York Court of Appeals would take a different view.  *See, e.g.*, *V.S. v.*

*Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (observing that federal courts are "bound to apply

the law as interpreted by a state's intermediate appellate courts unless there is persuasive

evidence that the state's highest court would reach a different conclusion").

Concluding, as all these courts did, that Section 208(b) does not apply retroactively to

claims that were already time barred is consistent with the language and structure of the CVA.

Whereas Section 214-g explicitly revived claims "barred as of as of the effective date of this

section because the applicable period of limitations has expired," nothing in Section 208(b)

provides that the new statute of limitations was intended to apply to actions that were already

time barred.  *See, e.g.*, *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty.*

*Renewal*, 35 N.Y.3d 332, 371 (2020) ("[I]t is a bedrock rule of law that, absent an unambiguous

statement of legislative intent, statutes that revive time-barred claims if applied retroactively will

not be construed to have that effect.").  Moreover, adopting Doe's reading of Section 208(b)

would lead to a bizarre result — namely, the circumscribed revival window created by Section

214-g would be irrelevant in nearly every case where it was invoked.  Indeed, it would be useful

only where, as in *DiSalvo*, a plaintiff had already turned fifty-five years old when the CVA was enacted and, thus, could not take advantage of the new infancy toll period in Section 208(b).[3]

Doe does not grapple with the terms of the CVA, including the contrast between the language of Section 208(b) and the language of Section 214-g. Nor does she acknowledge the uniform case law holding that Section 208(b) applies only prospectively. Instead, her principal argument is that the CVA is a "broadly remedial statute" and thus "should be applied retroactively." Pl.'s Opp'n 10. But contrary to Doe's argument, New York law is clear that revival statutes are "'extreme example[s] of legislative power'" and therefore must be "*narrowly* construed." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 815 (E.D.N.Y. 1984) (quoting *Hopkins v. Lincoln Trust Co.*, 135 N.E. 367, 267 (N.Y. 1922)) (emphasis added); *see, e.g.*, *S. H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 177-78 (N.Y. App. Div. 2022) (applying that principle to Section 214-g). If Doe were correct in arguing that Section 208(b) means she could file her state-law claims any time until her fifty-fifth birthday, the provision would be a vastly more "extreme" example of a revival statute than Section 214-g, which granted (factoring in extensions due to the COVID-19 pandemic) plaintiffs whose claims were revived less than three years during to bring their previously expired claims. *See PB-33 Doe v. Rudolph*, 216

---

[3]    That would not only be bizarre, but it would mean that parties and courts — including the Second Circuit — have spilled much ink for no reason. In *Jones v. Cattaraugus-Little Valley Central School District*, 96 F.4th 539 (2d Cir. 2024), for example, the plaintiff filed her claim during the short period after enactment of the CVA that preceded the opening of the revival window. The question presented was whether the requirement in Section 214-g that a revived action could not be brought until "six months after . . . the effective date of [that] section" was "a statute of limitations, a condition precedent to bringing suit, or some other affirmative defense." *Id.* at 543, 541. Finding the answer unclear, the court of appeals certified the question to the New York Court of Appeals, which accepted the certified question (but has not yet provided an answer). *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 232 N.E.3d 1259 (N.Y. 2024). If Doe's reading of Section 208(b) were correct, however, the answer to the certified question would be irrelevant, as the plaintiff's claim would have been timely without regard for whether the timing of her suit was consistent with Section 214-g.

N.Y.S.3d 375, 377 (N.Y. App. Div. 2024).  Nothing in the CVA suggests, let alone indicates, that the New York legislature intended such a result.

In sum, this Court joins all other courts that have considered the issue and holds that Section 208(b) does not "revive[] past claims" but rather "only extends the statute of limitations prospectively."  *Doe*, 669 F. Supp. 3d at 164 n.2.  It follows that the NYDCOE's motion to dismiss Doe's state-law claims must be and is GRANTED.

## CONCLUSION

For the reasons stated above, the NYCDOE's motion to dismiss is GRANTED in part and DENIED in part.  In particular, Doe's state-law claims against the NYCDOE are dismissed, while her federal claim survives.  Further, the Court declines to *sua sponte* grant Doe leave to amend, as the problems with Doe's state-law claims cannot be cured.  *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (observing that leave to amend may be denied where amendment would be futile); *see also* ECF No. 41 (Doe observing that she "does not believe that any amendment could cure the issues raised by" NYCDOE's motion).  Unless and until the Court orders otherwise, the NYCDOE shall answer Doe's remaining claim within **two weeks** of the date of this Opinion and Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).  The Clerk of Court is directed to terminate ECF No. 39.

SO ORDERED.

Dated: January 30, 2025
New York, New York

JESSE M. FURMAN
United States District Judge